1  **WO**

2

3

4

5

6                  **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9   Steven Elizaldi,                          No. CV-21-02204-PHX-DWL

10                  Plaintiff,               **ORDER**

11  v.

12  Commissioner    of    Social    Security
    Administration,

13
                    Defendant.
14

15         Plaintiff challenges the denial of his application for benefits under the Social

16  Security Act ("the Act") by the Commissioner of the Social Security Administration

17  ("Commissioner").   The Court has reviewed Plaintiff's opening brief (Doc. 11), the

18  Commissioner's answering brief (Doc. 14), and Plaintiff's reply (Doc. 15), as well as the

19  Administrative Record (Doc. 10, "AR"), and now reverses the decision of the

20  Administrative Law Judge ("ALJ"), and remands for further proceedings.

21  I.     <u>Procedural History</u>

22         On December 30, 2019, Plaintiff filed an application for disability and disability

23  insurance benefits, alleging disability beginning on September 1, 2019.  (AR at 22.)  The

24  Social Security Administration ("SSA") denied Plaintiff's application at the initial and

25  reconsideration levels of administrative review and Plaintiff requested a hearing before an

26  ALJ.   (*Id.*)   On April 27, 2021, following a telephonic hearing, the ALJ issued an

27  unfavorable decision.  (*Id.* at 19-31.)  The Appeals Council later denied review.

28  …

II.     The Sequential Evaluation Process And Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III.   The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and that Plaintiff had the following severe impairments: peripheral neuropathy and dysfunction of major joints.[1]  (AR at 24-25.)  Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing.  (*Id.* at 26.)  Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can frequently climb ladders, ropes and scaffolds.  The claimant can frequently balance, stoop, kneel and crouch.  He can occasionally crawl.  The claimant can frequently reach, handle, finger and feel with the bilateral upper extremities.  The claimant can have occasional exposure to unprotected heights and moving mechanical parts.  He can have frequent exposure to extreme heat, extreme cold and vibration.

(*Id.*)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (*Id.* at 29-30.)  The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) Dr. E. Wavak, M.D., state agency medical consultant ("persuasive, but only to the extent they are consistent with the [RFC]"); (2) Dr. R. Quinones, D.O., state agency medical consultant ("persuasive, but only to the extent they are consistent with the [RFC]"); (3) Mindy Stinski, FNP-C, treating provider ("persuasive, to the extent it is consistent with the [RFC]"); and (4) Kelly R. Favata, M.D., treating provider ("not very persuasive").  (*Id.* at 28-29.)

Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff could perform his past relevant work as a cashier II and was also capable of performing other jobs that exist in significant numbers in the national economy, including food service,

---

[1]     The ALJ also considered Plaintiff's "diabetes, hyperlipidemia, chronic venous hypertension, loss of central visual acuity and tarsal tunnel syndrome" but found "they do not significantly limit the claimant's physical or mental ability to do basic work activities for a continuous period of 12 months" and were thus "non-severe."  (AR at 25-26.)

1   hospital, and bagger.  (*Id.* at 30-31.)  Thus, the ALJ concluded that Plaintiff is not disabled.

2   (*Id.* at 31.)

3   IV.   Discussion

4        Plaintiff presents three issues on appeal: (1) whether "the ALJ erred by finding

5   claimant's type 1 diabetes mellitus was not a severe medical impairment"; (2) whether "the

6   ALJ erred by assigning a medium residual functional capacity that is unsupported by the

7   prior administrative medical findings and evidence of record"; and (3) whether "the ALJ

8   erred by failing to provide clear and convicing [sic] reasons for discrediting plaintiff's

9   symptom testimony."  (Doc. 11 at 10.)  As a remedy, Plaintiff seeks "an Order vacating the

10  Social Security Administration's finding that [Plaintiff] is not disabled."  (*Id.* at 1.)

11       A.   **Severity Finding At Step Two**

12       To proceed beyond step two, a claimant must have a severe impairment, or a

13  combination of severe impairments, that "significantly limits [his] physical or mental

14  ability to do basic work activities."  20 C.F.R. § 404.1520(c).  "An impairment is not severe

15  if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no

16  more than a minimal effect on the ability to do basic work activities.'"  *Webb v. Barnhart*,

17  433 F.3d 683, 686 (9th Cir. 2005) (citations omitted).  Notably, "[s]tep two is merely a

18  threshold determination meant to screen out weak claims."  *Buck v. Berryhill*, 869 F.3d

19  1040, 1048 (9th Cir. 2017) (citation omitted).  Because the ALJ must evaluate the

20  functional impact of both severe and non-severe impairments when determining the RFC

21  during later steps, "[t]he RFC . . . should be exactly the same regardless of whether certain

22  impairments are considered 'severe' or not."  *Id*. at 1049 (emphasis omitted).

23       Given these principles, to the extent Plaintiff's argument is that the ALJ erred by

24  failing to categorize his type 1 diabetes mellitus as severe for step-two purposes (Doc. 11

25  at 10-13), reversal is not warranted.  "As this Court has observed in earlier cases, Ninth

26  Circuit law is not a model of clarity concerning how to evaluate claims of step-two error.

27  Some cases suggest that, although it is error for an ALJ to fail to characterize a particular

28  impairment as 'severe' during step two, the error can be disregarded as harmless if the ALJ

properly addresses the impairment during later steps.   Other decisions suggest that a claimant can't complain about an ALJ's failure to identify a particular impairment as 'severe' during step two so long as the ALJ determined the claimant also had other impairments that so qualify.   At any rate, the dispositive issue is whether the ALJ properly evaluated the evidence and testimony concerning that condition during later steps and factored that condition into the RFC."   *Harvey v. Comm'r of Soc. Sec. Admin.*, 2021 WL 5822641, *2 (D. Ariz. 2021) (cleaned up).   Accordingly, the dispositive issue here is whether Plaintiff has established the existence of harmful error with respect to the ALJ's RFC formulation during later steps.   The dispute over the step-two severity characterization is a red herring.

### B.   **Plaintiff's Second Assignment Of Error**

Although Plaintiff's briefing suggests that Plaintiff is raising only three assignments of error, one of which relates to the formulation of the RFC, the Court interprets Plaintiff's briefing as raising two distinct challenges to the RFC finding: first, whether the ALJ erred in discounting the opinions of Dr. Quinones (Doc. 11 at 14-16); second, whether the ALJ's RFC formulation was supported by substantial evidence (*id.* at 16-19).

#### 1.   Dr. Quinones

##### a.   **Standard Of Review**

In January 2017, the SSA amended the regulations concerning the evaluation of medical opinion evidence.   *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017).   Because the new regulations apply to applications filed on or after March 27, 2017, they are applicable here.

The new regulations, which eliminate the previous hierarchy of medical opinions, provide in relevant part as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . .   The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . .

20 C.F.R. § 416.920c(a).[2]   Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be."  *Id.* § 404.1520c(c)(1).   Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  *Id.* § 404.1520c(c)(2)

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).   Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies.   Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."  *Id.*  With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.   The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings."  *Id.* at 792 (cleaned up).   Although an "ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records . . . the ALJ no longer needs to make specific findings regarding these relationship factors . . . ."  *Id.*

…

---

[2]      Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the specialization of the provider.  20 C.F.R. § 416.920c(c).

1

b.    **Dr. Quinones's Opinions**

2        Dr. Quinones, a non-examining consultive medical examiner, opined that Plaintiff

3   can "occasionally" lift or carry 20 pounds, "frequently" lift or carry 10 pounds, stand or

4   walk for four hours, sit for six hours of an eight-hour workday, have limited push/pull

5   ability in the upper extremities, "occasionally" climb ramps, "never" climb ladders, ropes,

6   or scaffolds, "frequently" balance and stoop, and only "occasionally" kneel, crouch, or

7   crawl.  (AR at 126-27.)  Dr. Quinones also opined that although Plaintiff had no reaching

8   restrictions, Plaintiff was "limited" in handling, fingering, and feeling.  (*Id.* at 127.)  For

9   environmental limitations, Dr. Quinones opined that Plaintiff would need to avoid

10  "concentrated exposure" to extreme cold and "even moderate exposure" to hazards like

11  machinery or heights.  (*Id.* at 128-29.)  Ultimately, Dr. Quinones concluded Plaintiff was

12  not disabled but should have a sedentary RFC.  (*Id.* at 131.)

13       c.    **The ALJ's Evaluation Of Dr. Quinones's Opinions**

14       The ALJ discussed Dr. Quinones's opinions in tandem with Dr. Wavak's opinions.

15  (AR at 28.)  The ALJ ultimately found Dr. Quinones's opinions to be "persuasive, but only

16  to the extent they are consistent with the [RFC]."  (*Id.*)  The ALJ's full rationale was as

17  follows:

18       At the initial level, state agency medical consultant, E. Wavak, M.D., opined
         the claimant was capable of performing light work, with the ability to stand,
19       walk and sit for six hours.  He could frequently push and pull with the
         bilateral upper extremities.  He could frequently climb ramps and stairs,
20       balance, stoop, kneel and crouch.  He must never climb ladders, ropes or
         scaffolds and can occasionally crawl.  He can frequently handle, finger and
21       feel with the bilateral upper extremities.  He must avoid concentrated
         exposure to extreme cold, extreme heat and vibration.  He must avoid even
22       moderate exposure to hazards.  Upon reconsideration, state agency medical
         consultant, R. Quinones, D.O., opined the claimant was capable of
23       performing light work, except he could stand and walk for four hours and sit
         six hours.  He could frequently push and pull with the bilateral upper
24       extremities.  He could occasionally climb ramps and stairs, kneel, crouch and
         crawl.  He could never climb ladders, ropes and scaffolds, but frequently
25       balance and stoop.  He can frequently handle, finger and feel with the
         bilateral upper extremities.  He must avoid concentrated exposure to extreme
26       cold and avoid even moderate exposure to hazards.

27       The treatment notes support limitations consistent with the residual
         functional capacity.  Medium lifting restrictions are supported given that the
28       claimant remained will full strength in the bilateral upper extremities and
         normal muscle tone.  A limitation to the noted posturals, frequent handling,

fingering and feeling, frequent exposure to extreme heat, extreme cold and vibration, as well as occasional exposure to unprotected heights and moving mechanical parts, all take into consideration the claimant's complaints of numbness and tingling to the bilateral upper and lower extremities, with a noted carpal tunnel surgery. However, additional limitations are not supported given that the claimant's physical examinations revealed no joint swelling nor tenderness, full range of motion in the joints, normal muscle tone, full strength in the bilateral upper and lower extremities, normal sensory testing and a normal gait. The opinions of Doctors Wavak and Quinones are fairly consistent with each other, but are not entirely consistent with the evidence as a whole. Their opinions appear to be an overestimation of the limitations the claimant would experience as a result of his impairments. For the preceding reasons, the undersigned finds their opinions are persuasive, but only to the extent they are consistent with the residual functional capacity.

(AR at 28, internal citations omitted.)

d.     **The Parties' Arguments**

Plaintiff argues that the ALJ's cited materials do not demonstrate that Dr. Quinones's opinions were inconsistent with objective medical evidence. (Doc. 11 at 15.) Specifically, Plaintiff challenges the ALJ's reasoning regarding Plaintiff's "joint swelling [and] tenderness, full range of motion in the joint, normal muscle tone, full strength in the bilateral upper and lower extremities, normal sensory testing and a normal gait." (*Id.*, citing AR at 28, 328, 331, 350, 353-54, 380, 386, 482, 511, 583.) Plaintiff contends that these records "clearly support[] Plaintiff's lack of sensation, absent reflexes and swelling in his bilateral extremities." (*Id.* at 16.)

The Commissioner explains that the "correct and only inquiry is whether substantial evidence supported the ALJ's evaluation of the medical source opinions" and argues that "the ALJ applied the revised regulations properly and substantial evidence supported the ALJ's findings." (Doc. 14 at 12-13.) The Commissioner argues that the ALJ properly considered Dr. Quinones's and Dr. Wavak's opinions in relation to each other and in relationship to the rest of the medical evidence. (*Id.* at 13-14.)

Plaintiff argues in reply that the ALJ's evaluation of Dr. Quinones's opinions was erroneous because "it fails to acknowledge that the evidence[] he relied on to assert Dr. Quinones' opinion was unsupported contained abnormal findings. Additionally, Dr. Quinones' opinion does not purport to rely on findings outlined by the ALJ related to

normal findings as to joint swelling, tenderness, range of motion or strength." (Doc. 15 at 4-5.)  In sum, Plaintiff argues that the ALJ relied on nearly the same evidence as Dr. Quinones to come to a different, less restrictive conclusion.  (*Id.* at 5-6.)

e.     **Analysis**

Plaintiff's challenge to, and the Commissioner's defense of, the ALJ's evaluation of Dr. Quinones's opinions both turn on whether the ALJ properly interpreted the underlying medical records.  On review, the Court is mindful that "we leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)).  With these principles in mind, the Court finds no error.

As an initial matter, the ALJ's evaluation of Dr. Quinones's opinions was, as a conceptual matter, appropriate under the new regulations, as the ALJ sought to identify treatment records that did not support and were inconsistent with Dr. Quinones's opined-to limitations.  (AR at 28, citing *id.* at 328, 331, 350, 353-54, 380, 386, 482, 511, 592.)

The ALJ's finding of inconsistency/unsupportability was also supported by substantial evidence.  In a November 2019 treatment note, although Plaintiff complained of "numbness and tingling feeling in the feet" in addition to feeling those "symptoms in his hands also," the treating provider noted "[n]ormal tone of muscles.  Strength 5/5 in upper and lower limbs." (AR at 327-28.)  It was rational for the ALJ to view these findings as inconsistent with Dr. Quinones's opinions, which (as noted) sought to assign various limits to Plaintiff's strength and associated ability to lift, carry, push, and pull.  (*Id.* at 128-31.)  Plaintiff correctly notes that, in the same medical record, the treating provider diagnosed "decreased sensation in the bilateral lower extremities and an absence of deep tendon reflexes."  (Doc. 11 at 15, citing AR at 328.)  Nevertheless, it was rational for the ALJ to conclude that despite the lack of sensation and reflexes, Plaintiff's normal muscle tone and strength did not require the severity of the limitations proposed by Dr. Quinones.  *Baca v. Comm'r of Soc. Sec. Admin.*, 2021 WL 1827232, *6 (D. Ariz. 2021) ("Although

alternative views of this evidence are plausible, the ALJ's interpretation is a rational one and is therefore entitled to deference.") (citing *Thomas*, 278 F.3d at 954).  The Court will not reweigh the evidence when it is subject to two competing but reasonable interpretations.  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.") (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir.2004)).

The same logic undermines many of the other purported inconsistencies identified by Plaintiff.  For example, although one treatment note indicated "no feeling to bilateral knee shin down [sic]," it also stated "[n]o joint swelling, tenderness or erythema" and "no Muscle weakness."  (AR at 331.  *See also id.* at 350 [noting "sensations normal" and "normal, full range of motion" but also "absent sensation on plantar aspect of both feet monofilament exam"]; *id.* at 353-54 [noting "tingling and numbness of extremities" and "absent sensation on plantar aspect of both feet monofilament exam" but also "musculoskeletal: normal, full range of motion, gait normal"]; *id.* at 380 [same]; *id.* at 386-87 [noting "1-2+ edema bilateral" but also "no limitation in motion, no muscle or joint pain, no muscle weakness, no neck/backache/shoulder pain, no swelling or redness in joints"]; *id.* at 482 ["absent sensation on plantar aspect of both feet" but also "sensations normal" for sensory testing and motor testing, as well as "normal, full range of motion, gait normal" under the musculoskeletal evaluation]; *id.* at 511 ["Normal gait and arm swing," "no edema," "[n]ormal tone of muscle," and "[d]eep tendon reflexes are 1+ and equal bilaterally."]; *id.* at 592 [presenting for "foot pain" but also noting "[n]o edema observed," "[m]uscle strength is 5/5 for all groups tested.  Muscle tone is normal."].)  Under these circumstances, the ALJ's rationale for discounting Dr. Quinones's opinions was legally valid under the new regulations and supported by substantial evidence.

…

…

…

2.    Analysis Of The RFC Determination

a.    **Standard Of Review**

As for the merits of the RFC determination more broadly, "[t]he ALJ assesses a claimant's RFC based on all the relevant evidence in the case record.  The ALJ must consider both the medical evidence and descriptions and observations of the claimant's limitations from the claimant's impairment(s), including limitations that result from the claimant's symptoms, such as pain, provided by the claimant, family, friends, and other people.  The RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate.  In other words, the ALJ must take the claimant's subjective experiences of pain into account when determining the RFC." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (cleaned up).  *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154.

b.    **The Parties' Arguments**

Plaintiff argues that the ALJ should have included "standing or walking limitations" based on Plaintiff's "complaints of lower extremity pain, numbness, tingling and cramping" as well as the testing that supported those complaints.  (Doc. 11 at 16-17.) Plaintiff also contends that the ALJ's determination that he "is capable of lifting 50 pounds up to one-third of an eight-hour workday and 20 pounds up to two-thirds of the time as well as an ability to use his hands for handling and fingering up to two-thirds of the day" is in direct opposition to the ALJ's finding of a severe impairment related to his "bilateral carpal and cubital tunnel syndrome, right trigger finger, right trigger thumb and left thumb ligament tear." (*Id.* at 17-18.)  Finally, Plaintiff faults the ALJ for including no limitations related to Plaintiff's diabetes.  (*Id.* at 18-19.)  More specifically, Plaintiff argues the ALJ

did not consider his "need for unscheduled breaks, shorter work shifts and ability to leave early" due to his diabetes.  (*Id.* at 19.)

In response, the Commissioner argues that there was no omission related to standing/sitting restrictions because the label of "medium work" encompasses walking, off and on, for 6 hours in an 8-hour workday.  (Doc. 14 at 14-16, citing *Terry v. Saul*, 998 F.3d 1010 (9th Cir. 2010).)  The Commissioner also argues, albeit in a different section of the response brief, that the Commissioner was not required to include any diabetes-related limitations in the RFC in light of the ALJ's determination that Plaintiff's symptom testimony (which encompassed Plaintiff's diabetes symptoms) should be discredited.  (*Id.* at 6 ["[T]he ALJ considered Plaintiff's non-severe diabetes further at later steps of the sequential evaluation, for instance, in his subjective complaint analysis.  The ALJ discussed Plaintiff's gait, alleged numbness and tingling in the extremities, his activities, which included exercise, and Plaintiff's treatment.  The ALJ considered Plaintiff's testimony, but he did not find any limitations pertaining to Plaintiff's diabetes impairment.  Thus, Plaintiff's contentions that the ALJ did not incorporate any diabetes related limitations in the RFC has no merit."].)  More generally, the Commissioner argues that "[t]he ALJ's findings are reasonably drawn from the record and are supported by substantial evidence.  This Court should affirm."  (*Id.* at 16.)

In reply, Plaintiff clarifies that "the ALJ repeatedly relies on the same sentence when supporting his assigned RFC, but fails to acknowledge that the citations relied upon contain conflicting facts" and fails to "address any diabetes-related limitations either by including them or explaining why it was proper to exclude them."  (Doc. 15 at 6-7.)

c.   **Analysis**

The Court finds harmful error in the ALJ's RFC formulation.  Although the ALJ followed the correct process that the relevant authorities and regulations require ALJs to follow when making an RFC determination—the ALJ expressly considered all of the medical opinions in the record, as well as Plaintiff's testimony regarding his symptoms, and provided reasons for crediting or not crediting each of those evidentiary sources—the

ALJ provided legally insufficient reasons for discrediting Plaintiff's testimony (as discussed in more detail in Part IV.D below).  Remand is necessary so the ALJ may consider how that testimony, if credited, would affect Plaintiff's RFC in the first instance. "[A]n ALJ must take into account a claimant's symptom testimony when determining the RFC." *Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017).  This is especially true given that the vocational expert opined that if Plaintiff "was limited to sedentary-level work with occasional use of the bilateral extremities for handling and fingering, as well as the ability to take up to two unscheduled breaks per day lasting 10 to 15 minutes at a time to attend to blood sugar issues," Plaintiff would not be able to perform his past relevant work or other work in the economy.  (AR at 91.)

    D.    **Plaintiff's Symptom Testimony**

        1.    <u>Standard Of Review</u>

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations omitted).  If so, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).  Instead, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "providing specific, clear, and convincing reasons for doing so."  *Brown-Hunter*, 806 F.3d at 488-89.  This is the most demanding standard in Social Security cases.  *Garrison*, 759 F.3d at 1015.

        2.    <u>The ALJ's Evaluation Of Plaintiff's Symptom Testimony</u>

The ALJ provided the following rationale for discrediting Plaintiff's symptom testimony:

> The claimant alleges his diabetic symptoms, including numbness and tingling in the bilateral upper and lower extremities, prevents him from performing substantial gainful activity.  He reported not being able stand on his feet for more than two to four hours at a time, frequent falls, dropping items, sweating, shaking and the need to elevate his legs three to four times per day.
>
> While the medical records detail symptoms resulting in certain limitations,

the objective medical records fail to support the severity of impairments and symptoms alleged, but correspond with the given residual function capacity herein.  The claimant has about a six-year history of diabetes, which he treated with an insulin pump.  The claimant also suffered from diabetic related symptoms.  He reported right hand pain and numbness, without injury, noting his thumb and index finger were caught in flexion, not extending.  His physical examinations revealed a positive median nerve compression test in the right hand, visible index and thumb triggers in the right hand, tender A1s and numbness in the right hand.  He also reported left hand and thumb pain, after experiencing a fall.  Magnetic resonance imaging (MRI) of the left upper extremity, revealed complete disruption of the ulnar collateral ligament complex with a subtle and distinct Stener lesion.  He underwent a nerve conduction study of the bilateral upper extremities, which revealed median neuropathy at the wrist, consistent with carpal tunnel syndrome.  The claimant also reported numbness and tingling in his bilateral feet and legs.  He underwent a nerve conduction study of the bilateral lower extremities, which was within normal limits and did not show any significant neuropathy.

Treatment notes show the claimant responded well to treatment in contradiction to his testimony of continued disabling symptoms.  Oral medication, as well as trigger finger injections to the right hand failed to resolve the claimant's pain and numbness, and on July 16, 2020, the claimant underwent right endoscopic carpal tunnel release, right trigger thumb and index trigger release, as well as right cubital tunnel release.  Post-operatively, he continued to treat his symptoms with oral medication. His physical examinations revealed no joint swelling nor tenderness, full range of motion in the joints, normal muscle tone, full strength in the bilateral upper and lower extremities, normal sensory testing and a normal gait.  The claimant reported to his treating providers that he was eating a healthy diet, walking a few times per week, participating in shopping and household chores, was able to climb a flight of chairs, could walk two level blocks, as well as run a short distance.

(AR at 27-28, internal citations omitted.)

Summarized more succinctly, the ALJ provided four reasons for discrediting Plaintiff's testimony: (1) Plaintiff's treatment success; (2) inconsistency with treatment records showing that Plaintiff's physical examinations "revealed no joint swelling nor tenderness, full range of motion in the joints, normal muscle tone, full strength in the bilateral upper and lower extremities, normal sensory testing and a normal gait"; (3) inconsistency with Plaintiff's activities of daily living ("ADLs") such as "eating a healthy diet, walking a few times per week, participating in shopping and household chores, was able to climb a flight of chairs, could walk two level blocks, as well as run a short distance"; and (4) inconsistency with statements from treating providers showing a

1   less-than-12-month disability timeframe.  (*Id.* at 27-30.)[3]

2                   3.   The Parties' Arguments

3           Plaintiff identifies three reasons for challenging the ALJ's dismissal of his
4   "complaints of numbness and tingling in the bilateral upper and lower extremities,
5   difficulty standing for more than two to four hours at a time, frequent falls, dropping items,
6   sweating, shaking, and the need to elevate his legs three to four times per day," "bilateral
7   hand pain and numbness," and "complaints of difficulty managing his blood sugar,
8   particularly when active at work."  (Doc. 11 at 20-21.)   First, Plaintiff argues that
9   inconsistency with objective medical evidence "standing alone is legally insufficient" to
10  discredit a claimant's symptom testimony and that the objective medical evidence does
11  not, at any rate, support the ALJ's finding of inconsistency here.  (*Id.* at 20-21.)  Plaintiff
12  also faults the ALJ for omitting any discussion of "Plaintiff's complaints of difficulty
13  managing his blood sugar, particularly when active at work."  (*Id.* at 20.)  Second, Plaintiff
14  argues that the ALJ's conclusion that Plaintiff responded well to treatment is unsupported
15  by the record.  (*Id.* at 21-22.)  Third, Plaintiff argues that the ALJ's reliance on his ADLs
16  is "plainly inadequate" because the ALJ "fails to explain how eating a healthy diet, walking
17  a few times per week, walking two level blocks and climbing a flight of stairs is
18  inconsistent with any of his symptom testimony."  (*Id.* at 22-23.)   More specifically,
19  Plaintiff argues that the treatment records cited by the ALJ provide no indication as to the
20  "details regarding the type, frequency or duration of the shopping and household chores he
21  was participating in."  (*Id.* at 23.)

22          The Commissioner responds that "Plaintiff's arguments lack merit, and his
23  disagreement with the ALJ's evaluation of his testimony is not a valid reason for setting
24  aside the ALJ's decision in this case."  (Doc. 14 at 7-11.)  To support the ALJ's decision
25  to discredit Plaintiff's symptom testimony, the Commissioner cites (1) objective medical
26  evidence; (2) Plaintiff's successful treatments; and (3) Plaintiff's ADLs.  (*Id.*)   The

27
28  _____
    [3]     In the severity analysis at step 3, as for Plaintiff's diabetes, the ALJ also noted: "The
    record reflects consistent treatment and does not reflect associated complications nor
    limitations."  (AR at 25.)

                                           - 15 -

Commissioner concludes that "[a]lthough Plaintiff may disagree with the ALJ's interpretation of the evidence and regardless of whether the evidence could be interpreted in a light more favorable to Plaintiff, the ALJ's interpretation of the evidence was rational and 'must be upheld.'" (*Id.* at 11, citing *Thomas*, 278 F.3d at 954.)

In reply, Plaintiff argues that the Commissioner and the ALJ misunderstand Plaintiff's "small fiber neuropathy." (Doc. 15 at 8. *See also* Doc. 15-1 [Public Manuscript titled: "Diagnosis and Treatment of Pain in Small Fiber Neuropathy"].) Plaintiff argues that although "Defendant claims the ALJ considered the objective medical evidence as required," the decision "does not provide full support for this contention as it entirely fails to acknowledge absent sensation in his lower extremities or testing performed by his podiatrist confirming the presence of small fiber neuropathy within the evidence he purported to rely on in his decision." (*Id.* at 8-9.) Related to diabetes, Plaintiff argues his blood glucose levels are "consistently out of range and extremely high," as evidenced by the constant need for adjustment, which went unacknowledged by the ALJ. (*Id.* at 9.) Finally, Plaintiff argues that the ALJ provided "no analysis" as to why Plaintiff's ADLs undermined his symptom testimony and that the "ALJ decision did not reconcile the internal inconsistencies in the cardiology record where he pulled the statement that claimant participates in shopping and household chores, walk[s] two level blocks and run[s] a short distance. The same exhibit reveals claimant also reported fatigue, blurred vision, vision loss, swelling of ankles or feet, back pain, leg cramps at night, poor balance, sleeplessness, numbness, shakiness, tingling, and weakness." (*Id.* at 9-10, citing AR at 596.)

4.   Analysis

The ALJ committed harmful error when evaluating Plaintiff's symptom testimony. Plaintiff testified to numerous limitations associated with his diabetes, including "issues with standing for more than two hours at a time" and "[n]umbness in the leg, loss of feeling, I would tend to fall extremely often at work." (AR at 75.). At his last job, working as a cashier at Circle K, Plaintiff was only able to work between 4 and 6 hours. (*Id.* at 76.)

Within that short shift, Plaintiff would need multiple breaks to address his blood sugar. (*Id.* at 76-77 ["[T]he more I move around the more I turn up [phonetic] stuff and unfortunately, when you work, it's hard to consume to keep your sugars going. Unfortunately, they don't like you working and eating at the same time, so that created some issues as well. I was trying to keep my sugar up."]. *See also id.* at 82 ["When you're working, it's very active and you can't eat . . . that tends to be a major issue with the low blood sugars. Being at home, I can actually eat as needed and then rest as needed, not standing directly on my feet constantly."].) Plaintiff explained that, when his blood sugar gets low, he breaks "out into sweat, I lose feelings from my legs, from my knees down, I tend to fall, I start to shake, I can't speak." (*Id.* at 77.) Ultimately, "every week," Plaintiff ended up leaving a shift early due to the "side affects [sic] of the low sugars, just extreme pain, not being able to stand for long periods of time, not being able to sit for long periods of time." (*Id.* at 78.) These limitations culminated in Plaintiff being let go because "they could no longer adhere to the schedule because I had issues with standing for more than two hours at a time." (*Id.* at 75.)

One of the reasons the ALJ provided for the adverse credibility determination was that Plaintiff's description of his symptoms conflicted with Plaintiff's ADLs. Under Ninth Circuit law, this is a permissible basis for discounting a claimant's symptom testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[T]he ALJ may consider inconsistencies . . . between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms. While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (cleaned up); *Fry v. Berryhill*, 749 F. App'x 659, 660 (9th Cir. 2019) ("The ALJ proffered specific, clear, and convincing reasons for discounting Fry's testimony

1    concerning the severity of her symptoms, including inconsistencies between her daily

2    activities and alleged limitations . . . .").

3    However, the ALJ's finding of inconsistency is not supported by substantial

4    evidence.  The records cited by the ALJ show that Plaintiff reported "walk[ing] a few times

5    a week" but in the same record Plaintiff is noted to do "[n]o exercise."  (AR at 28, citing

6    AR at 353, 385 ["Walks a few times a week."].)  The ALJ does not explain, nor can the

7    Court understand, how walking a few times a week would be inconsistent with Plaintiff's

8    testimony that the activity of a 4-hour shift was too taxing on his body because of blood-

9    sugar imbalances and his need to take breaks.  Plaintiff also testified that doing dishes

10   "takes all day" because of his need for frequent breaks.  (*Id.* at 87.)  Meanwhile, Plaintiff's

11   consumption of a "healthy" diet has no apparent relevance to whether Plaintiff is able to

12   consistently be on his feet to maintain employment.  (*Id.* at 28, citing *id.* at 353.)  The ALJ

13   also cited a March 16, 2021 treatment note that states Plaintiff "[e]xercises 15-30 minutes

14   per day.  Also participates in shopping and household chores.  Patient is able to climb a

15   flight of chairs, walk 2 level blocks and run a short distance."  (*Id.* at 28, citing *id.* at 596.)

16   But this treatment note is, if anything, consistent with Plaintiff's hearing testimony.  (*See,*

17   *e.g.*, *id.* at 79 [noting Plaintiff elevates his legs and then "walk[s] around for 15 minutes"];

18   *id.* at 86 ["I can sit for about an hour and then I have to get up and move around for at least

19   10 minutes, 15 minutes at a time, get the circulation going again."]; *id.* at 87 ["I do the

20   dishes and that takes all day."]; *id.* at 258 [stating friends help with grocery shopping,

21   laundry takes 2-3 hours, cooking takes 1-2 hours, and cleaning takes all day].)  *See Burrell*

22   *v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("Substantial evidence does not support the

23   ALJ's determination that there is a conflict concerning Claimant's ability to vacuum.

24   Claimant consistently reported to the physical therapist that she had trouble vacuuming,

25   which is entirely consistent with her testimony at the hearing that stretching and pulling,

26   which are required to vacuum, cause her pain.  Claimant did not testify that she never could

27   vacuum; she stated that vacuuming was difficult for her 'at this point.'").  The activities

28   cited by the ALJ are "sporadic and punctuated with rest."  *Reddick v. Chater*, 157 F.3d 715,

722 (9th Cir. 1998). *See also Ghanim*, 763 F.3d at 1165 ("But here, as described, the daily activities, which included completing basic chores, sometimes with the help of a friend, and attending occasional social events, do not contradict Ghanim's testimony."). Additionally, as part of his medical condition, Plaintiff must walk for short periods of time to regain circulation in his legs. Plaintiff testified to significant limitations that would prevent him from working meaningful hours and, in fact, testified that he was fired from a previous job due to the need for accommodations. The ALJ's rejection of Plaintiff's symptom testimony based on his ADLs is not supported by substantial evidence.

The ALJ also identified, as another reason for discrediting Plaintiff's symptom testimony, that the testimony was inconsistent with the objective medical evidence. But such inconsistency alone cannot support an adverse credibility finding. *Burch*, 400 F.3d at 681 (an ALJ may not "reject a claimant's subjective complaints based solely on lack of medical evidence to fully corroborate the alleged severity of pain"). At any rate, it is not clear to the Court—and the ALJ did not explain—*why* the cited medical records are inconsistent with Plaintiff's testimony. The ALJ contrasted Plaintiff's need for constant breaks, frequent falls, and the need to elevate his legs with "examinations revealed no joint swelling nor tenderness, full range of motion in the joints, normal muscle tone, full strength in the bilateral upper and lower extremities, normal sensory testing and a normal gait." (AR at 28.) As discussed above in Part IV.B.1, those treatment notes can rationally be viewed as inconsistent with some of *Dr. Quinones's* opined-to limitations, because they go to Plaintiff's muscle strength and ability to push and pull (which Dr. Quinones sought to characterize as compromised). But even if Plaintiff walks with a normal gait, lacks tenderness or swelling in joints, and maintains normal muscle tone, such observations do not undermine Plaintiff's testimony that he would need constant breaks due to his blood sugar.

The ALJ's final proffered reason for rejecting Plaintiff's symptom testimony was that Plaintiff "responded well to treatment in contradiction to his testimony of continued disabling symptoms." (AR at 27.) "[E]vidence of medical treatment successfully relieving

symptoms can undermine a claim of disability."  *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).  However, this conclusion is not supported by substantial evidence.

At the hearing, Plaintiff testified that he was not able to get physical therapy on his hands post-surgery "due to COVID."  (AR at 83.)  Plaintiff explained that he has about 40% remaining use in his right hand and "numbness" as well as "lightening shooting from the elbow to the fingers, which is constant now."  (*Id.*)  He no longer texts or types and stopped playing video games about four years ago.  (*Id.* at 83-84.)  As for Plaintiff's left hand, he is "still awaiting surgery" because his "A1C" levels need to "lower enough to go through the surgery."  (*Id.* at 84.)  Plaintiff reported "difficulty holding . . . money, counting change for customers."  (*Id.* at 84.)  Plaintiff also testified that he can carry his 31-pound daughter for about five minutes before he gets "[t]otal numbness in the arms and hand."  (*Id.* at 84-85.)  In his exertional activities questionnaire, Plaintiff confirmed that he cannot close his hands and is unable to get surgery on his left hand because of his diabetes.  (*Id.* at 257.)

Regarding Plaintiff's hand, finger, and elbow issues, the ALJ reasoned that Plaintiff "underwent right endoscopic carpal tunnel release, right trigger thumb and index trigger release, as well as right cubital tunnel release" and post-operatively Plaintiff "continued to treat his symptoms with oral medication."  (AR at 27-28.)  Plaintiff also showed "full strength in the bilateral upper extremities and normal muscle tone."  (*Id.* at 28.)  The ALJ concluded that additional limitations for handling, fingering, and feeling "are not supported given that the claimant's physical examinations revealed no joint swelling nor tenderness, full range of motion in the joints, normal muscle tone, full strength in the bilateral upper and lower extremities, normal sensory testing and a normal gait."  (*Id.*)

These conclusions are not supported by substantial evidence.  The ALJ acknowledged that Plaintiff had surgery on his right hand in July 2020.  (*Id.* at 27-28, citing *id.* at 465, 473-47.)  The follow-up appointment cited by the ALJ shows that "numbness has resolved" but Plaintiff's "elbow is tender."  (*Id.* at 465.)  The following page also notes that "[Plaintiff] is having difficulty opening jars" and was instructed to engage in physical

therapy so he can "regain the last little bit of his motion." (*Id.* at 466.)  This supports that at least, as to his right hand, Plaintiff's surgery and treatment were temporarily successful. However, the ALJ then cited two treatment notes to show that, "[p]ost-operatively," Plaintiff "continued to treat his symptoms with oral medication." (*Id.* at 28, citing *id.* at 308, 323.)   Although these notes indicate continued oral medication, both *pre-date* Plaintiff's surgery on his right hand.  (*Id.* at 307 [1/13/20: treatment note]; *id.* at 322 [2/11/20: treatment note].)  Such notes obviously cannot serve as substantial evidence of the success of Plaintiff's post-operative treatment.

The ALJ's ultimate conclusion also relies on treatment notes evidencing "no joint swelling nor tenderness, full range of motion in the joints, normal muscle tone, full strength in the bilateral upper and lower extremities, normal sensory testing and a normal gait." (*Id.* at 28, citing *id.* at 328, 331, 350, 353-54, 380, 386, 482, 511, 583.)  But again, the ALJ does not explain why this evidence has any bearing on Plaintiff's response to hand treatment.  To start, several of the notes do not even mention upper extremities.  (*See, e.g.*, *id.* at 386 [5/21/20: noting "no significant changes to the lower extremities within the interim"]; *id.* at 583 [2/9/21: "Muscle strength is 5/5 for all groups tested.  Muscle tone is normal."].)  Moreover, several of the treatment notes identify issues with numbness or problems with the left hand, which the ALJ barely addressed.  (*Id.* at 331 [10/29/19: "No joint swelling, tenderness or erythema" but also noting "bilateral" numbness in both upper and lower extremities."]; *id.* at 511 [12/11/20: skin is normal, no edema but also showing follow up with hand surgeon for "trigger thumb, left thumb"].)  Generic findings about strength or full range of motion in unidentified tests do not establish that Plaintiff's hand treatment was successful.  (*See, e.g.*, *id.* at 328 [11/6/19: "Strength 5/5 in upper and lower limbs."]; *id.* at 350 [2/25/20: foot exam noting "no edema" on extremities]; *id.* at 353-54; *id.* at 380 [6/16/20: normal musculoskeletal findings, "full range of motion," "no edema" in extremities]; *id.* at 482 [12/8/20: normal musculoskeletal findings, "full range of motion," "no edema" in extremities].)  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's

1   complaints." *Brown-Hunter*, 806 F.3d at 493.

2          The ALJ's analysis of Plaintiff's diabetes treatment fares no better.  At step two, the

3   ALJ reasoned that although "[l]aboratory tests revealed [Plaintiff's] A1C levels ranged

4   between 11.8 and 8.3," the "record reflects consistent treatment and does not reflect

5   associated complications nor limitations."  (AR at 25, citing AR at 349, 475-500.)  But the

6   cited treatment notes suggest the opposite.  For example, one treatment note explains

7   Plaintiff has had diabetes since 2015 and lists "Diabetes related complications: Has severe

8   DM neuropathy with tingling and numbness in extremities-pain is keeping him from sleep

9   . . . Patient started Medtronic insulin pump along with CGM but recently having transmitter

10  issues . . . Patient is on automode 91% of the time, TIR 57%, hyperglycemia 28% and very

11  severe hyperglycemia 15%."  (*Id.* at 349.)  A survey of Plaintiff's treatment notes also

12  shows a consistent struggle by Plaintiff's doctors to keep his blood sugar within the normal

13  range.  (*Id.* at 479 ["Due to consistent low BGs in the morning, recommend decreasing

14  basil rates."]; *id.* at 480 ["Check BGs frequently."]; *id.* at 481 [noting "27% hypoglycemia"

15  and continued issues with high blood glucose]; *id.* at 489 [glucose at 126, which is noted

16  to be high]; *id.* at 490 [Hemoglobin A1C remains high from 2/12/2020 to 1/7/2019].)  These

17  treatment notes do not, on their face, demonstrate that Plaintiff responded well to diabetes

18  treatment and had no additional complications, and the ALJ did not provide any

19  explanation that might shed more light on the matter.

20         Because none of the ALJ's proffered reasons for discrediting Plaintiff's testimony

21  are supported by substantial evidence, remand is necessary.  *Treichler*, 775 F.3d at 1103

22  ("Because the ALJ set out his RFC and summarized the evidence supporting his

23  determination, the government argues that we can reasonably infer that the ALJ rejected

24  Treichler's testimony to the extent it conflicted with that medical evidence.  But we cannot

25  substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's

26  conclusions.  Although the ALJ's analysis need not be extensive, the ALJ must provide

27  some reasoning in order for us to meaningfully determine whether the ALJ's conclusions

28  were supported by substantial evidence.  No such reasoning is present here.  Because 'the

agency's path' cannot 'reasonably be discerned,' we must reverse the district court's decision to the extent it affirmed the ALJ's credibility determination.").

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **reversed** and the case is **remanded** for further proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment and close the case.

Dated this 24th day of March, 2023.

_____
Dominic W. Lanza
United States District Judge